IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BARBARA SUE COLLINS, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:20-CV-00769-SDJ-CAN |
| v. | § | |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying her claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

On September 7, 2017, Plaintiff Barbara Sue Collins ("Plaintiff") filed an application for disability and disability insurance benefits [TR 10, 68, 70, 80, 148-149] alleging an onset of disability date of October 11, 2010 [TR 10, 150]. Plaintiff's date last insured was June 30, 2014 [TR 10, 61, 66]. Plaintiff was born on July 1, 1956, making her fifty-four years of age at the time of alleged onset of disability [TR 61] with an age classification of that of a "[p]erson closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d). She was fifty-seven years old at the time of her date last insured [TR 61] with an age classification of that of a "[p]erson of advanced age." *See id.* Plaintiff has not engaged in substantial gainful activity since her alleged onset date of October 11, 2010, through her date last insured of June 30, 2014 [TR 10, 174].

On January 17, 2018, Plaintiff's claim was initially denied [TR 82], and again upon reconsideration on June 19, 2018 [TR 90]. On August 8, 2018, Plaintiff requested an administrative hearing ("Hearing") [TR 93-94], which was held before an Administrative Law Judge ("ALJ") on November 12, 2018 [TR 10]. At Hearing, the ALJ heard testimony from Plaintiff, Plaintiff's attorney representative, and a vocational expert ("VE") [TR 28-60]. On January 17, 2020, the ALJ issued an unfavorable decision [TR 7-19].

Specifically, after hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ determined through the sequential evaluation process that the Plaintiff did not suffer from a disability [TR 12-19].[1] At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity from her alleged onset date of October 11, 2010, through her date last insured of June 30, 2014 [TR 13]. At step two, the ALJ found Plaintiff has the following severe impairments: obesity, degenerative disc disease, major dysfunction of the knee, and peripheral vascular disease/deep vein thrombosis/blood clotting disorder [TR 13]. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) [TR 14]. At step four, the ALJ determined that Plaintiff maintains the following residual functional capacity:

---

[1] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. §404.1520. First, a claimant engaged in substantial gainful employment at the time of her disability claim remains not disabled. *Id*. § 404.1520(b). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. *Id*. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered disabled if she can perform her past work based on her residual functional capacity. *Id*. § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. *Id*. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id*.

> The claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant could perform occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and occasional balancing, stooping, kneeling, crouching, and crawling.

[TR 15]. Continuing the step four analysis, the ALJ determined that Plaintiff through the date of last insured was capable of performing past relevant work in customer service, as it is generally performed [TR 18]. The ALJ found that this past relevant work did not require the performance of work-related activities precluded by the claimant's residual functional capacity [TR 18]. Based on this determination, the ALJ concluded Plaintiff was not disabled from October 10, 2010, the alleged onset date, through June 30, 2014, the date last insured [TR 19].

Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 1-4]. The Appeals Council denied Plaintiff's request on August 14, 2020, making the decision of the ALJ the final decision of the Commissioner [TR 1-4]. On October 7, 2020, Plaintiff filed the instant suit [Dkt. 1]. On July 15, 2021, the Administrative Record was received from the Social Security Administration [Dkt. 16]. Plaintiff filed her Opening Brief on July 16, 2021 [Dkt. 19]. Plaintiff urges remand is necessary on the basis that the ALJ rejected all medical opinion evidence of record, including specifically the opinions of the SAMCs and Plaintiff's treating surgeon Dr. Young; thus, the ALJ improperly substituted his own medical opinion to determine Plaintiff's RFC [Dkt. 19]. The Commissioner filed its Response on September 14, 2021 [Dkt. 20], and Plaintiff her Reply on September 24, 2021 [Dkt. 21].

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Keel v. Saul*, 986 F.3d

551, 555 (5th Cir. 2021) (quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert denied, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 19 F.4th at 718 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). The ALJ resolves conflicts in the evidence; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though the Court will scrutinize the record to determine if evidence exists. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff argues the ALJ improperly rejected the opinions of Dr. Young and the SAMCs, and in doing so, improperly substituted his own lay medical opinion in formulating the RFC [Dkt. 19 at 6]. The Commissioner rejoins that the ALJ applied the correct rules for evaluating medical evidence and that the ALJ could freely find the doctors' opinions unpersuasive and not adopt any one opinion in its entirety. [Dkt. 20 at 7].[2]

---

[2] The ALJ determines whether a claimant's severe impairments and functional limitations prevent her from working. Thus, the Court agrees any statements by Dr. Young (or any other physician for that matter) as to whether Plaintiff can work remain opinion evidence, which "is inherently neither valuable nor persuasive to the issue of whether

The RFC is an assessment based on all the relevant evidence of a claimant's maximum ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. § 404.1545(a); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most a claimant can do despite her physical limitations. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).

The Commissioner has issued new regulations regarding the evaluation of medical source opinions. The Social Security Administration's updated rule for assessing medical opinion evidence governs all claims filed on or after March 27, 2017, and thus applies here. *See* 20 C.F.R. § 404.1520c. The old rule required the ALJ to give a treating physician's opinion "controlling weight" in the absence of specific mitigating factors, and to "always give good reasons" in the determination for the weight given to a treating physician's opinion. *Id*. § 404.1527(c)(2). The new rule eliminates the "controlling weight" given to treating physicians. *Id*. § 404.1520c(a). The new rule, 20 C.F.R. § 404.1520c, provides that the ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the [claimant's] medical sources."[3] Rather, the ALJ shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship

---

[claimant is] disabled." *See* 20 C.F.R. § 404.1520b(c); *Neely v. Barnhart*, 512 F. Supp. 2d 992, 997 (S.D. Tex. 2007) (*citing Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)) (citations omitted) (a treating physician's statements that a claimant is "disabled" or "unable to work" are not entitled to any deference).

[3] In transitioning to the new rule, the administration noted, "[t]he current policies that focus upon weight, including the treating source rule, have resulted in reviewing courts focusing more on whether we sufficiently articulated the weight we gave opinions rather than on whether substantial evidence supports the Commissioner's final decision." *Webster v. Comm'r*, No. 3:19-cv-97-DAS, 2020 WL 760395, at *3 (N.D. Miss. Feb. 14, 2020). "In other words, the new rules are an attempt to eliminate confusion about a hierarchy of medical sources. . . . Reviewing courts, therefore, will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s)." *Id*.

with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. *Id*. § 404.1520c(a), (c)(1)-(5).

*ALJ's Assessment of Dr. Young and the SAMCs Opinions*

On February 8, 2012, Plaintiff underwent a right rotator cuff repair surgery performed by Dr. Mark Young, M.D. ("Dr. Young") [TR 1702-1703]. Dr. Young years later prepared a medical source statement, entitled Treating Physician's Clinical Assessment, and signed November 8, 2019 [TR 1967]. Dr. Young completed the form in its entirety, and specifically found Plaintiff could occasionally lift up to ten pounds; continuously use her hands; could less than occasionally bend, climb, balance, stoop, kneel, crouch, and crawl; stand and/or walk less than two hours per regular work day; sit eight hours per regular work day; and he noted that the claimant's impairments would not produce "good days" and "bad days" [TR 1967-1969]. The ALJ rejected Dr. Young's opinion; the Decision includes the following explanation regarding such rejection:

> Mark Young, M.D., in a letter dated November 8, 2019, noted that the claimant could occasionally lift up to 10 pounds; continuously use her hands; could less than occasionally bend, climb, balance, stoop, kneel, crouch, and crawl; stand and/or walk less than 2 hours per regular work day; sit 8 hours per regular work day; and he noted that the claimant's impairments would not produce "good days" and "bad days" (Exhibit 37F). The undersigned did not find this opinion persuasive, as it was made over 5 years after the claimant's date last insured expired. It was not clear of the time the doctor was referring to when assigning the claimant these limitations. In addition, the doctor did not provide any supporting evidence or point to any objective medical findings to support his conclusions.

[TR 17]. A Title II benefits claimant must prove that his or her disability began on or before the date his or her insured status expired—in this case on or before June 30, 2014. *See* 42 U.S.C. §

423(a), (c); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); 20 C.F.R. § 404.131. Dr. Young's clinical assessment, signed in 2019, states "[i]t is essential that your answers are based on your clinical assessment of your patient's impairments from 10/11/10 [Plaintiff's alleged onset date] to the present" [TR 1967]. The fact that Dr. Young's assessment was completed after the relevant time is not dispositive. *See McLendon v. Barnhart*, 184 F. App'x 432, 432 (5th Cir. 2006) (noting that retrospective opinions can prove a prior disability where opinion clearly refers to the relevant period of disability); *Booker v. Astrue,* No. 3:10-CV-1940-P-BF, 2011 WL 4031096, at *7 (N.D. Tex. Aug. 15, 2011) ("retrospective medical opinions are valid."); *Howeth v. Colvin*, No. 12-CV-0979-P, 2014 WL 696471, at *4 (N.D. Tex. Feb. 24, 2014) (same). However, when a physician renders an opinion after a claimant's insured status expired, the opinion is relevant only to the extent it describes the claimant's condition between the alleged onset date and the date last insured. *See Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. May 13, 2008) (unpublished). Here, as the ALJ noted, it is unclear which portion during the specified time frame Dr. Young asserts Plaintiff suffered from the identified limitations. The record indicates, from the onset date to date last insured Dr. Young's treatment of Plaintiff was for a right rotator cuff injury—an injury to her shoulder area—not her knee. The record reflects any treatment Dr. Young provided related to Plaintiff's knee falls in 2017, long after the passage of the date last insured. The clinical assessment expressly states it is premised upon Dr. Young's diagnoses of Plaintiff's left knee pain and left knee stiffness. Therefore, the Court agrees with the ALJ's assessment, finding that the largely conclusory checkbox assessment from Plaintiff's treating source is insufficient to overcome the fact that his opinion was in retrospect and in conflict with a record that does not support such findings. *Stephens v. Saul*, No. 3:20-CV-823-BH, 2020 WL 7122860, at *7 (N.D. Tex. Dec. 4, 2020) (citing *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017)).

The ALJ also found the opinions of the SAMCs to be unpersuasive. Specifically, the ALJ opined in his Decision:

> Nancy Childs, M.D., and Scott Spoor, M.D., the Stage agency medical consultants, opined that the claimant had insufficient evidence prior to her date last insured to find that the claimant had limitations from severe impairments (Exhibit 1A; 3A). Their opinions are unpersuasive, as they are not consistent with the evidence of record, nor are they supported by the objective evidence and clinical findings. The record contained evidence of multiple severe impairments that existed prior to the claimant's date last insured. The undersigned has considered the impairments when assessing the claimant's residual functional capacity.

[TR 17]. Notably, in finding these opinions unpersuasive, the ALJ preponderated in favor of finding Plaintiff has severe impairments and thus ultimately provided for *more* physical limitations than the SAMCs. The Court finds the ALJ's analysis of the SAMCs opinions was proper under the new regulations.

*RFC Assessment is Valid*

Whether proper or not, Plaintiff further argues, citing *Ripley v. Chater*, that in rejecting the opinions of the Dr. Young and the SAMCs, no expert medical opinion addresses Plaintiff's functional capabilities; thus, the RFC is nothing more than the ALJ's own independent medical assessment [Dkt. 19 at 11]. In response to this argument, the Commissioner argues that Plaintiff's proposition is inherently contrary to the new regulatory framework effective for claims filed after March 27, 2017 [Dkt. 20 at 7]; and, that the Fifth Circuit has expressly rejected the argument that a medical source statement is a prerequisite for a valid RFC [Dkt. 20 at 7].

*Ripley* applied and interpreted the old treating physician regulations, as do the remainder of the cases cited by Plaintiff. *See Vasquez v. Comm'r of Soc. Sec.*, No. 7:21-cv-00028, 2022 WL 2975471, at *4 (N.D. Tex. June 30, 2022) ("*Ripley* interpreted an old regulatory regime no longer applicable to the Commissioner's disability determination"), *report and recommendation adopted*, No. 7:21-cv-00028, 2022 WL 2972240 (N.D. Tex. July 26, 2022); *see also Webster,* 19 F.4th at

718-19 (discussing 20 C.F.R. § 404.1520c) ("Notably, though, ALJs are no longer required to give controlling weight to a treating physician's opinion, as was mandated by federal regulations and our case law in the past."). While it remains true that ALJs may not make disability determinations utterly devoid of supporting medical opinion evidence, no requirement exists that the ALJ rely on any single medical opinion in its entirety. And the Fifth Circuit has never, under either the old or new regulations, required that an "RFC precisely match an expert medical opinion." *Dixon v. Comm'r*, No. 4:18-CV-634, 2019 WL 5875901, at *1 (E.D. Tex. Sept. 27, 2019); *D.J.M. v. Berryhill*, No. 18-cv-0193, 2019 WL 1601491, at *4 (W.D. La. 2019) ("Like a trial judge or jury, the ALJ may weigh the competing opinions, take into consideration all of the other evidence of record, and make a finding that may not be exactly the same as the opinion of any one medical source."). Under the new regulation's more flexible methodology for analyzing opinion evidence, the ALJ is directed to fashion the RFC based on all the relevant evidence in the record; the ALJ is no longer required to defer or give any specific evidentiary weight to any one medical opinion. *See Fleming v. Saul*, No. SA-19-CV-00701-ESC, 2020 WL 4601669, at *7 (W.D. Tex. Aug. 10, 2020) (citing *Taylor*, 706 F.3d at 602-03). The opinions of Dr. Young and the "SAMCs' formal functional assessments [are] a singular piece of a larger evidentiary puzzle." *Vasquez*, 2022 WL 2975471, *3. Here, the ALJ examined an extensive array of medical evidence, assessing Plaintiff's treatment history and the findings of Plaintiff's doctors (dedicating multiple pages to discussing the same), and interpreting Plaintiff's RFC from that medical opinion evidence. Consider, the following excerpts from the ALJ's determination:

> The record reveals that, prior to her date last insured, the claimant had no evidence of disabling symptoms, such that they would prevent the claimant from performing the above residual functional capacity. For instance, the medical evidence revealed that the claimant suffered a massive pulmonary embolism in October 2010 (Exhibit 2F9). She was found to have a blood clot in IVC, RA and RV, and pulmonary arteries. The claimant required treatment with thrombolytic agent. She continued

to require anticoagulation management. An echocardiogram performed in October 2012 showed no evidence of a clot in the RA or RV cavity (Exhibit 2F10). In April 2013, the claimant was noted to have no evidence of pulmonary embolism (Exhibit 5F74). The claimant was very reluctant to continue to take Coumadin; therefore, her doctor switched her medicine to Xarelto. Prior to the claimant's date last insured, she had no reoccurrence of blood clots or serious complications associated with peripheral vascular disease or deep vein thrombosis/blood clotting disorder. Therefore, based on the evidence contained in the record prior to her date last insured, the undersigned limited the claimant to the above residual functional capacity.

In addition, prior to the claimant's date last insured, the claimant alleged back pain from a remote injury that occurred in 1991 (Exhibit 3F2). However, physical examination revealed the claimant had a normal gait with some tenderness on palpation to the lumbar region (Exhibit 3F3). She reported that her lower back pain was aggravated by lifting objects, walking, and standing (Exhibit 3F7). However, she stated that medication reduced her pain and was able to remain active (Exhibit 3F46, 49, 58). An MRI of the claimant's lumbar spine performed in May 2013 revealed degenerative changes with L2-L3 through L5-S1 intervertebral disc dehydration/degeneration with posterior broad-based bulges producing varying degrees of neural exit canal impingement bilaterally (Exhibit 36F3). She continued with conservative treatment and pain management without serious complaints. Therefore, prior to the claimant's date last insured, the claimant was capable of performing the above residual functional capacity.

Furthermore, prior to the claimant's date last insured, the claimant had complaints of knee pain (Exhibit 3F33). She stated that her knee pain with activity was 6/10 and with activity was 8/10 (Exhibit 3F45). She described the pain was constant and aching, sharp and burning in nature. She stated that this pain was made better by sitting or lying down and applying heat. She also stated that this pain was made worse by bending, lifting, standing and walking. However, physical examination showed that the claimant's gait was normal and inspection of her extremities was normal (Exhibit 3F47, 49, 59). Examination noted that the claimant had normal range of motion of all joints (Exhibit 20F4, 8, 21, 27, 33, 42). The claimant reported that pain medication reduced her pain and allowed her to remain active (Exhibit 3F46, 49, 58). She did not require surgery during the time under review. Therefore, concerning the claimant's knee pain, the undersigned limited the claimant to the above residual functional capacity prior to her date last insured.

….

Considering the claimant's allegations, the undersigned has found that the claimant's testimony and statements regarding her extreme limitations as a whole, was not entirely consistent with objective medical evidence contained in the record. For instance, the claimant's testimony was grossly inconsistent with the medical evidence, which made it less persuasive. Specifically, the claimant reported

REPORT AND RECOMMENDATION - Page 10

> constant use of a wheelchair or walker since October 2010; however, the medical evidence prior to her date last insured did not document the use of any assistive devices. In fact, physical examination showed that the claimant's gait was normal and inspection of her extremities was normal (Exhibit 3F47, 49, 59). Examination noted that the claimant had normal range of motion of all joints (Exhibit 20F4, 8, 21, 27, 33, 42). The claimant reported that pain medication reduced her pain and allowed her to remain active (Exhibit 3F46, 49, 58), which was grossly inconsistent with her medical evidence.
>
> Although the claimant was alleging disability due to significant breathing issues since her blood clots were resolved in October 2011, along with back and knee pain, the objective medical evidence did not fully support the claimant's complaints. This was not to say the claimant was pain-free; however, the evidence did not support a finding that her pain was disabling prior to the date last insured. It did not appear that the claimant's pain was of such frequency, intensity, or duration as to be disabling. The evidence of record failed to demonstrate the presence of pathological clinical signs, significant medical findings, or neurological abnormalities which would establish the existence of a pattern of pain of such severity that would contraindicate claimant's engaging in all substantial gainful activity. The claimant frequently reported that pain medication reduced her pain and allowed her to remain active (Exhibit 3F46, 49, 58), which was grossly inconstant with her medical evidence.

[TR 16-17]. The ALJ's review of the evidence demonstrates substantial compliance with the applicable regulations, and Plaintiff has not shown that the ALJ erred in his review of the record. *See Liguez v. Kijakazi*, No. 4:20-cv-02798, 2021 WL 4943321, at *9 (S.D. Tex. Aug. 11, 2021) ("The ALJ discussed the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c."), *report and recommendation adopted*, No. 4:20-cv-2798, 2021 WL 4941997 (S.D. Tex. Oct. 22, 2021); *Julie A. v. Comm'r*, 20-cv-1237, 2022 WL 813901, at *11 (N.D.N.Y. Mar. 17, 2022) (affirming ALJ's decision where "ALJ's determination was supported by substantial evidence," in light of all of Plaintiff's medical records and testimony); *Tederrell G. v. Comm'r*, 5:20-cv-1129, 2022 WL 827787, at *13 (N.D.N.Y. Feb. 22, 2022) (affirming the ALJ's decision where "the ALJ appropriately considered and reached an RFC based on the entire record[.]"), *report and recommendation adopted*, 5:20-cv-1129, 2022 WL 823664 (N.D.N.Y. Mar. 18, 2022); *Martell-Rivera v. Comm'r*, No. 19-1545, 2021

WL 4342859, at *11 (D.P.R. Sept. 23, 2021) (affirming the ALJ's decision where the ALJ fully reviewed the record and recognized claimant "had more limitations than assessed by the consultative and non-examining consultants in 2014 and accommodated these additional limitations in the RFC finding for light work."); *Lyn P. v. Saul*, No. 19 C 1596, 2021 WL 2823089, at *7 (N.D. Ill. July 7, 2021) ("[C]ontrary to Plaintiff's claims there was no evidentiary deficit, and the ALJ did not construct an RFC based on her own lay opinions; instead, the ALJ determined Plaintiff's RFC based on the evidence in the record, including medical evidence, diagnostic imaging, stage agency examinations and reports, and Plaintiff's own testimony and self-reports"). The Court finds substantial evidence supports Plaintiff's RFC.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends the Commissioner's decision be **AFFIRMED.**

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile*

*Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 30th day of August, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE